COURT
OF APPEALS
SECOND
DISTRICT OF TEXAS
FORT WORTH
NO. 2-02-322-CV
 
PAT TREBESCH AND                                                                
APPELLANTS
NANCY TREBESCH
V.
MICHAEL MORRIS AND                                                              
APPELLEES
BELINDA MORRIS
------------
FROM THE 141ST DISTRICT COURT OF TARRANT COUNTY
------------
OPINION
------------
Appellants Pat and Nancy Trebesch agreed
to sell a racehorse to Appellees Michael and Belinda Morris. After Appellees
paid a portion of the purchase price, Appellants sold the horse to another
buyer. Appellees sued for the return of their money, alleging breach of contract
and conversion. The trial court granted summary judgment in Appellees' favor,
awarded attorneys' fees, and severed Appellants' counterclaim. We affirm the
trial court's judgment.
Background
The parties agree that in March 2000,
Appellants orally contracted to sell Appellees a racehorse, "I'm Too
Impulsive," for $30,000. The parties further agree that Appellees paid
Appellants $20,000 and that the horse was to be delivered to Appellees in July
2000, at which time the balance of the purchase price was due. It is undisputed
that in July the deal between the parties fell through, and four or five days
later Appellants sold the horse to another buyer for $35,000. Appellants refused
to return Appellees' $20,000, resulting in this lawsuit being filed by
Appellees.
Appellants filed a counterclaim alleging
they were damaged by a letter written by Appellees on February 14, 2001 to the
American Paint Horse Association attacking the personal character of Appellant
Pat Trebesch because of the transaction involving "I'm Too Impulsive."
In three issues on appeal, Appellants
contend: there was a material fact regarding whether the contract was an earnest
money contract, permitting Appellants to keep the money paid by Appellees; by
not requesting attorneys' fees in Appellees' motion for summary judgment or
submitting proof with the motion, Appellees waived their claim for attorneys'
fees; and the motion to sever Appellants' counterclaim was improperly granted
because the issues in the counterclaim were intertwined with Appellees' suit.
Was The $20,000
Non-refundable Earnest Money?
In their first issue, Appellants assert
there was an issue of fact raised as to which party breached the contract and
whether the contract was an earnest money contract that would permit Appellants
to retain the $20,000.
In a summary judgment case, the issue on
appeal is whether the movants met their summary judgment burden by establishing
that no genuine issue of material fact exists and that the movants are entitled
to judgment as a matter of law. Tex. R. Civ. P. 166a(c); S.W. Elec. Power
Co. v. Grant, 73 S.W.3d 211, 215 (Tex. 2002); City of Houston v. Clear
Creek Basin Auth., 589 S.W.2d 671, 678 (Tex. 1979). The burden of proof is
on the movants, and all doubts about the existence of a genuine issue of
material fact are resolved against the movants. S.W. Elec. Power Co.,
73 S.W.3d at 215; Rhone-Poulenc, Inc. v. Steel, 997 S.W.2d 217, 223
(Tex. 1999); Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.,
391 S.W.2d 41, 47 (Tex. 1965). Therefore, we must view the evidence and its
reasonable inferences in the light most favorable to the nonmovants. Great
Am., 391 S.W.2d at 47.
Appellants' brief provides no discussion
or analysis regarding their statement that the evidence raised an issue of fact
as to which party breached the contract, nor do Appellants direct this court to
any evidence in the record raising an issue regarding which party breached the
contract, nor do they further brief their contention. For an issue to be
properly before this court, the issue must be supported by argument and
authorities and must contain appropriate citations to the record. See
Tex. R. App. P. 38.1(h); Knoll v. Neblett, 966 S.W.2d 622, 639 (Tex.
App.--Houston [14th Dist.] 1998, pet. denied). We are not required to
search the record, with no guidance from Appellants, to see if an issue of
material fact was raised by the record. See Hall v. Stephenson,
919 S.W.2d 454, 466-67 (Tex. App.--Fort Worth 1996, writ denied). Thus, an
inadequately briefed issue may be waived on appeal. Id. at 467; see
also Fredonia State Bank v. Gen. Am. Life Ins. Co., 881 S.W.2d 279, 284
(Tex. 1994) (discussing "longstanding rule" that point may be waived
due to inadequate briefing). Accordingly, we do not further consider this
complaint. See Fredonia, 881 S.W.2d at 284; TXO Prod. Co.
v. M.D. Mark, Inc., 999 S.W.2d 137, 143 (Tex. App.--Houston [14th
Dist.] 1999, pet. denied).
With regard to whether the $20,000 was a
refundable deposit or non-refundable earnest money, Appellants contend that
Appellant Nancy Trebesch's deposition testimony that the $20,000 was "like
earnest money" established that Appellants were entitled to retain the
$20,000 as damages.
A review of the summary judgment evidence
reveals the following testimony concerning the $20,000:

 [Deposition of Appellant Nancy
 Trebesch:]
        
 Q. Were the Morrisses ever advised by you or your husband that their deposit
 on the horse would be nonrefundable?
        
 A. It really wasn't a deposit. No, I guess the question would be -- the answer
 would be no.
        
 Q. What was the $20,000?
        
 A. Partial payment for the horse. It was -- actually, what it was is, we call
 it -- and what we told them -- I'm trying to think how you put this -- it was
 like earnest money.
        
 Q. There was no agreement between you all and the Morrises that you would keep
 earnest money in the event that the sale didn't go through?
        
 A. No discussion, no.
        
 Q. You all just did that?
        
 A. That's customary in our -- in our business.
        
 Q. To keep it?
        
 A. Yes.
        
 Q. To keep $20,000?
        
 A. If they -- if they breached a contract, yes.
 [Deposition of Appellant Pat Trebesch:]
        
 Q. Did the contract provide that you could keep any monies paid to you?
        
 A. No sir.
        
 Q. Did you ever tell them that their deposits would be nonrefundable?
        
 A. No, sir.
        
 Q. There was no such agreement like that, was there?
        
 A. No, sir.
        
 Q. Why, then, did you keep the money?
        
 [Appellants' Counsel]: Objection as to form.
        
 A. Because of the verbal contract that their loss-of-use insurance was
 supposed to be paid and I was supposed to be paid up front.
        
 Q. And this entitled you to keep $20,000?
        
 A. Yes, sir.

Viewing the summary judgment evidence in
the light most favorable to Appellants, we conclude that the testimony relied
upon by Appellants does not raise a genuine issue of material fact concerning
whether the contract between the parties provided that the $20,000 paid by
Appellees was non-refundable earnest money. We overrule Appellants' first issue.
Attorneys' Fees
In their third issue, Appellants contend
Appellees waived their right to attorneys' fees because their motion for summary
judgment did not properly request attorneys' fees and no summary judgment
evidence was presented in support of any claim for attorneys' fees.
Procedural
history
In their original petition, Appellees
specifically sought attorneys' fees under section 38.001 of the Texas Civil
Practice and Remedies Code. Tex. Civ. Prac. & Rem. Code Ann. § 38.001(8)
(Vernon 1997).(1)
Appellees' motion for summary judgment
contends Appellants had no contractual right to retain Appellees' advance
payment and Appellees are entitled to judgment as a matter of law. In closing,
Appellees "pray for judgment against Defendants, including attorneys'
fees and for any further relief to which they may be entitled."
[Emphasis added.] Attached to Appellees' motion were excepts from Appellants'
depositions. These excerpts pertained to Appellees' breach of contract claim.
There was no summary judgment evidence relating to Appellees' claim for
attorneys' fees.
Appellants filed a summary judgment
response attempting to show why Appellees had not established their breach of
contract claim as a matter of law. Appellants' response does not mention any
claim by Appellees for attorneys' fees.
On May 16, 2002, the trial court granted
Appellees' motion for summary judgment. The order simply granted the motion, it
does not contain any decreetal language ordering Appellants to pay any sum of
money to Appellees, nor does the order mention Appellees' claim for attorneys'
fees or Appellants' counterclaim for damages. The order did not contain a
"Mother Hubbard" clause that purported to dispose of all issues in the
lawsuit, nor did the order recite that it was a final judgment.
On May 30, 2002, Appellees filed an
application for attorneys' fees and a motion to sever Appellants' counterclaim
from the claim of Appellees. In the application for attorneys' fees, Appellees
claimed that because the court had ruled in their favor on their breach of
contract claim, Appellees were entitled to attorneys' fees pursuant to section
38.001(8). Attached to the application for attorneys' fees was an affidavit from
Appellees' attorney stating the extent of his work in this case and that $12,228
was the amount of reasonable and necessary attorneys' fees for Appellees to
recover as a result of Appellants' breach of contract.
On August 2, 2002, Appellants filed a
response to Appellees' application for attorneys' fees and a response to
Appellees' motion to sever. The trial court held an evidentiary hearing on
Appellees' application for attorneys' fees and motion to sever. Appellees'
attorney testified regarding his attorneys' fee claim, and Appellants reiterated
their argument that Appellees had waived their claim for attorneys' fees because
Appellees' pleadings did not seek attorneys' fees, and Appellees' motion for
summary judgment did not attach proof of Appellees' entitlement to attorneys'
fees.
On August 14, 2002, the trial court signed
a "Final Judgment" awarding Appellees $20,000 in damages, pre- and
post-judgment interest, and $12,228 in attorneys' fees. On the same day, the
court signed a separate order granting Appellees' motion to sever.
Were
attorneys' fees a ground in Appellees' motion for summary judgment?
Summary judgment cannot be granted except
on the grounds expressly presented in the motion. Johnson v. Brewer &
Pritchard, P.C., 73 S.W.3d 193, 204 (Tex. 2002); Sci. Spectrum, Inc. v.
Martinez, 941 S.W.2d 910, 912 (Tex. 1997). In determining whether grounds
are expressly presented, reliance may not be placed on briefs or summary
judgment evidence. McConnell v. Southside Indep. Sch. Dist., 858 S.W.2d
337, 341 (Tex. 1993). The purpose of this requirement is to provide the opposing
party with adequate information for opposing the motion and to define the issues
or points for the purpose of summary judgment. Westchester Fire Ins. Co. v.
Alvarez, 576 S.W.2d 771, 772 (Tex. 1978), overruled on other grounds by
City of Houston v. Cleak Creek Basin Auth., 589 S.W.2d 671, 678 (Tex.
1979); Camden Mach. & Tool, Inc. v. Cascade Co., 870 S.W.2d 304,
309-10 (Tex. App.--Fort Worth 1993, no writ).
Although Appellees' prayer in their motion
for summary judgment seeks judgment against Appellants "including
attorneys' fees," we conclude that Appellants' claim for attorneys' fees
was not actually a ground listed in the motion for summary judgment. The motion
addressed Appellees' breach of contract claim and put Appellants on notice that
Appellees were seeking summary judgment on that ground. The mere mention of
attorneys' fees in the prayer would certainly not be sufficient to put
Appellants on notice that attorneys' fees were a ground being sought by the
motion, and in fact Appellants' response in no way addressed the attorneys' fee
issue. We hold that because Appellees' motion for summary judgment did not
involve Appellees' claim for attorneys' fees, the trial court did not abuse its
discretion in subsequently holding an evidentiary hearing on Appellees'
application for attorneys' fees and in awarding attorneys' fees to Appellees. We
overrule Appellants' third issue.
Severance
In their second issue, Appellants contend
the trial court abused its discretion in severing Appellants' counterclaim from
the claims of Appellees. Appellants' position is that their counterclaim was so
intertwined with Appellees' claims that it constituted a compulsory counterclaim
and severance of their compulsory counterclaim was an abuse of discretion.
Appellees claim the counterclaim was permissive and severance was proper under
the guidelines of Rule 41. Tex. R. Civ. P. 41 (stating "actions which have
been improperly joined may be severed" and "[a]ny claim against a
party may be severed and proceeded with separately").
A severance splits a single suit into two
or more independent actions, each action resulting in an appealable final
judgment. Van Dyke v. Boswell, O'Toole, Davis & Pickering, 697
S.W.2d 381, 383 (Tex. 1985). Severance of claims under the Texas Rules of Civil
Procedure rests within the sound discretion of the trial court. Liberty
Nat'l Fire Ins. Co. v. Akin, 927 S.W.2d 627, 629 (Tex. 1996) (orig.
proceeding).(2) A claim is properly severable if
(1) the controversy involves more than one cause of action, (2) the severed
claim is one that would be the proper subject of a lawsuit if independently
asserted, and (3) the severed claim is not so interwoven with the remaining
action that they involve the same facts and issues. Guar. Fed. Sav. Bank v.
Horseshoe Operating Co., 793 S.W.2d 652, 658 (Tex. 1990) (op. on reh'g).
The controlling reasons for a severance are to do justice, avoid prejudice, and
further convenience. Id.
Appellants contend their counterclaim is
compulsory and therefore the trial court abused its discretion in severing the
counterclaim from the claims of Appellees. A counterclaim is compulsory if
"it arises out of the transaction or occurrence that is the subject matter
of the opposing party's claim and does not require for its adjudication the
presence of third parties of whom the court cannot acquire jurisdiction."
Tex. R. Civ. P. 97(a).
There is a split in the courts of appeals
regarding whether an order severing a compulsory counterclaim will automatically
constitute an abuse of discretion. Compare Rucker v. Bank One Tex., N.A.,
36 S.W.3d 649, 651 (Tex. App.--Waco 2000, pet. denied); Goins v. League Bank
& Trust, 857 S.W.2d 628, 630 (Tex. App.--Houston [1st Dist.]
1993, no writ); and Mathis v. Bill De La Garza & Assocs., 778
S.W.2d 105, 106-07 (Tex. App.--Texarkana 1989, no writ) (all holding that
severance of a compulsory counterclaim is an abuse of discretion), with In
re Occidental Permian Ltd., No. 07-03-0016-CV, slip op. at 4, 2003 WL
1799012, at *2 (Tex. App.--Amarillo April 7, 2003, orig. proceeding [pet. for
mandamus filed]) (holding that so long as trial court abides by Rule 41 it is
not error to sever and proceed separately with compulsory counterclaim); see
also Hart v. Attorneys-At-Law, No. 01-97-890-CV, 1999 WL 2391, *6 (Tex.
App.--Houston [1st Dist.] Dec. 30, 1998, no pet.) (not designated for
publication) (disagreeing with argument that severance of compulsory
counterclaim was abuse of discretion and applying criteria of Rule 41).
(3)
Occidental recognizes the split
among the circuits, but states it is bound by the holding of the Texas Supreme
Court in McGuire v. Commercial Union Ins. Co., 431 S.W.2d 347, 350-51
(Tex. 1968). Occidental, slip op. at 4, 2003 WL 1799012, at *2 n.2.
(4) In McGuire, the court citing Rule 41 held that it
"is not necessary to determine whether or not the McGuire claim was, in
fact, a compulsory counterclaim, since the trial court had the discretionary
power to sever the McGuire claim." McGuire, 431 S.W.2d at 351. In Cherokee
Water Co. v. Forderhause, the court of appeals held that a counterclaim was
compulsory in nature and was improperly severed. 641 S.W.2d 522, 523-26 (Tex.
1982). Without further discussion regarding the nature of the counterclaim, the
supreme court applied the criteria of Rule 41 and McGuire regarding
appropriateness of the severance, and reversed the court of appeals. Id.
at 525-26.
We conclude that we need not determine the
nature of Appellants' counterclaim, but we must apply the criteria of Rule 41
and Guaranty Federal Saving Bank, 793 S.W.2d at 658.
In their counterclaim, Appellants alleged
causes of action for defamation, business disparagement, malicious civil
prosecution, and malicious criminal prosecution. These causes of action all
arose out of a letter sent by Appellees on February 14, 2001 to the American
Paint Horse Association attacking the personal character of Appellant Pat
Trebesch because of the transaction involving "I'm Too Impulsive."
Appellees' breach of contract and
conversion claims against Appellants culminated in July 2000 when Appellants
sold the horse to a third party and refused to return Appellees' $20,000.
Appellants' counterclaim did not arise until February 2001 when Appellants sent
their letter to the American Paint Horse Association. We hold that these two
claims involve two separate causes of action, each of which would be the proper
subject of a lawsuit if independently asserted, and that the claims are not so
interwoven as to involve the same facts and issues. Accordingly, the trial court
did not abuse its discretion in severing Appellants' counterclaim from the
remainder of the case. We overrule Appellants' second issue.
Conclusion
Having overruled all of Appellants' issues
on appeal, we affirm the judgment of the trial court.
 
                                                                       
DIXON W. HOLMAN
                                                                       
JUSTICE
 
PANEL A: CAYCE, C.J.; HOLMAN and GARDNER,
JJ.
DELIVERED: August 21, 2003

1. "A person may recover reasonable attorney's fees
from an individual . . ., in addition to the amount of a valid claim and costs,
if the claim is for . . . an oral or written contract."
2. A trial court abuses its discretion when it acts
without reference to any guiding rule or principle or acts arbitrarily or
unreasonably. Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238,
241-42 (Tex. 1985).
3. "Opinions not designated for publication by the
court of appeals under these or prior rules have no precedential value but may
be cited with the notation, '(not designated for publication).'" Tex. R.
App. P. 47.7.
4. The court in Occidental discussed the fact
that the test applied when determining the validity of a severance differs from
the test applied when assessing whether a counterclaim is compulsory. The court
noted that "the test used in determining whether a matter should be joined
as a compulsory counterclaim is much more liberal in scope than that used to
assess the validity of a severance." Occidental, slip op. at 4,
2003 WL 1799012, at *2 n.2.